**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| HAROLD W. NIX, CAROL A. NIX, | § | |
| CHARLES C. PATTERSON, MARY L. | § | |
| PATTERSON, NELSON J. ROACH, | § | **CASE NO.  2:17-CV-00434** |
| | § | |
| Plaintiffs, | § | **CASE NO. 2:17-CV-00435** |
| | § | |
| v. | § | **CASE NO. 2:17-CV-00436** |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

On April 12, 2018, this Court issued a summary order that **GRANTED** Defendant's
Motion to Dismiss Plaintiff's Section 6751 Claims. (Dkt. No. 115.) In that order, the Court
announced its intention to issue a written opinion providing "a full explanation and analysis of the
Court's ruling announced into the record." (*Id*. at 2.) Such explanation and analysis is provided
herein.

## I. BACKGROUND

This is a partner-level refund suit filed under 26 U.S.C. § 6230(c)(3) after three partners,
Harold Nix ("Nix"), Charles Patterson ("Patterson"), and Nelson Roach ("Roach") (collectively,
"Taxpayers"), paid the taxes, penalties, and interest assessed against them as a result of two prior
partnership-level proceedings under 26 U.S.C. § 6226. In these two prior cases, *NPR Investments,
LLC, ex rel. Roach v. United States*, 732 F. Supp. 2d 676 (E.D. Tex. 2010), *aff'd in part, vacated
in part*, *rev'd in part sub nom. NPR Investments, L.L.C. ex rel. Roach v. United States*, 740 F.3d
998 (5th Cir. 2014) (the "NPR partnership-level proceeding") and *Klamath Strategic Inv. Fund,
LLC v. United States*, 472 F. Supp. 2d 885 (E.D. Tex. 2007)*, aff'd sub nom. Klamath Strategic Inv.*

*Fund ex rel. St. Croix Ventures v. United States*, 568 F.3d 537 (5th Cir. 2009); *Klamath Strategic Inv. Fund, LLC v. United States*, No. 5:04-CV-278, 2012 WL 4889805, at *1 (E.D. Tex. Sept. 24, 2012), *aff'd sub nom. Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States*, 557 F. App'x 368 (5th Cir. 2014) (the "Klamath partnership-level proceeding")*, the Fifth Circuit and this Court denied "massive artificial tax-shelter losses" being used to shelter the Taxpayers' income. (Dkt. No. 32 at 2.)

Once litigation of the transactions and the associated tax penalties in the *Klamath* and *NPR* matters concluded, the IRS issued Notices of Computational Adjustments for the 2000 and 2001 tax years, and Affected Item Notices of Deficiency for 2000, 2001, 2002, and 2003 tax years, to reflect the assessed tax, penalties, and interest resulting from the partnership-level proceedings. (*See, e.g.*, Dkt. Nos. 75 at ¶¶ 23–25, 75-1.)[1] After the Taxpayers paid the amounts due, they individually filed refund claims for the tax years 2000, 2001, 2002, and 2003 on November 17, 2015, alleging several errors committed by the IRS in adjusting the amounts each partner owed as well as defenses of reasonable cause and good faith. (*See, e.g.*, Dkt. Nos. 75 at ¶¶ 26–29, 75-1, 32.) The IRS issued Notices of Disallowance on January 26, 2017, which denied portions of those administrative refund claims. (*See, e.g.*, Dkt. Nos. 75 at ¶ 31, 75-1.)

Following the denials, the Taxpayers filed this refund suit, alleging computational errors, reasonable cause, and good faith. (Dkt. Nos. 75, 76, 77.) The computational errors stem from issues in both the Klamath partnership-level proceeding and the NPR partnership-level proceeding.

---

[1] The IRS issued the Notices to the individual Taxpayers as follows:
- Nix: Affected Item Notices of Deficiency for the tax years 2000, 2001, and 2002; Notices of Computational Adjustment for the tax years 2000 and 2001(Dkt. No. 76 at ¶ 23.)
- Patterson: Affected Item Notices of Deficiency for the tax years 2000, 2001, and 2002; Notices of Computational Adjustment for the tax years 2000 and 2001 (Dkt. No. 76 at ¶ 22.)
- Roach: Affected Item Notices of Deficiency for the tax years 2001and 2002; Notices of Computational Adjustment for the tax year 2001 (Dkt. No. 77 at ¶ 19.)

Additionally, the Taxpayers—for the first time in their initial disclosures—raised the issue of the government's compliance with 26 U.S.C. § 6751. (Dkt. No. 32 at 3–4.) More specifically, the Taxpayers assert:

> Defendant has not established that prior to the initial determination or assessment of penalties against the Plaintiffs that the individual who determined the initial determination or assessment received approval, in writing, from his immediate supervisor as required by 26 U.S.C. § 6751.

(*See id.*) The United States moved to dismiss all claims or issues related to § 6751. (Dkt. No. 32 at 1.)

## II.   LEGAL STANDARD

Partnership-related tax matters fall under the Tax Treatment of Partnership Items Act of 1982 ("TEFRA"), which provides the Internal Revenue Service ("IRS") and taxpayers with procedures to address a partnership's return in a single proceeding without having to resort to duplicative deficiency proceedings at the individual partner level. *See U.S. v. Woods*, 134 S. Ct. 557, 562–63 (2013). Under TEFRA, partnership-related tax matters advance in two stages.

During the first stage, the IRS initiates proceedings to address partnership items through a partnership-level TEFRA audit and issues a final partnership administrative adjustment ("FPAA"). *See id.* at 563–64. While the "FPAA signifies the end of partnership-level proceedings," *NPR Investments*, 740 F.3d at 1006, the partners may seek judicial review of the FPAA with either the United States Tax Court, a federal district court, or the Court of Federal Claims under § 6226(d). *See Woods*, 134 S. Ct. at 563. In these partnership-level proceedings under § 6226, the reviewing court determines whether any penalty can be applied at the partnership level. *See NPR Investments*, 740 F.3d at 1009–10 (quoting *Woods*, 134 S. Ct. at 564). The "applicability of any penalty . . . which relates to an adjustment to a partnership item is **conclusive** in a subsequent refund action." *See Woods*, 134 S. Ct. at 564 (quoting § 6230(c)(4)) (emphasis added) (internal quotations

omitted).

During the second stage, which only occurs after the adjustments are finalized by either the FPAA or a district court's decision under § 6226, the tax penalties are imposed at the partner-level, which is reflected by the IRS making computational adjustments to the tax liability of the individual partners. *See NPR Investments*, 740 F.3d at 1009–10. The Supreme Court described the sort of individualized partner-level determinations that must be made at this second stage:

> Even where a partnership's return contains significant errors, a partner may not have carried over those errors to his own return; or if he did, the errors may not have caused him to underpay his taxes by a large enough amount to trigger the penalty; or if they did, the partner may nonetheless have acted in good faith with reasonable cause, which is a bar to the imposition of many penalties. None of those issues can be conclusively determined at the partnership level.

*Woods*, 134 S. Ct. at 564. "Most computational adjustments may be directly assessed against the partners, bypassing deficiency proceedings and permitting the partners to challenge the assessments **only** in post-payment refund actions." *See NPR Investments*, 740 F.3d at 1009–10 (emphasis added) (citing § 6230 (a)(1), (c)). "If the deficiency calculation [is] purely computational, the [IRS] issues to the partner a 'notice of computational adjustment,' rather than a notice of deficiency." *Chai v. Comm'r of Internal Revenue*, 851 F.3d 190, 196 (2d Cir. 2017). If there are affected items that require an individual, partner-level factual determination, the IRS issues an affected-item notice of deficiency. *See id.* at 197.

Under § 6230(c)(1), a partner may file an administrative refund claim on grounds that (1) the IRS erroneously computed adjustments when applying the FPAA or the decision of a court in an action brought under § 6226; (2) the IRS failed to allow a credit or to make a refund attributable to the application of the FPAA or the decision of a court in an action brought under § 6226; or (3) the IRS erroneously imposed any penalty related to an adjustment to a partnership item. *See* 26 U.S.C. § 6230(c)(1)(A)–(C) (2001). These administrative claims must be filed within six months

after the notice is mailed to the partner. 26 U.S.C. § 6230(c)(2)(A) (2001). If any portion of the refund claim is not allowed, the partner may bring suit within two years of the date of the notice of disallowance. 26 U.S.C. §§ 6230(c)(3), 6532 (2001). No suit can be filed until the administrative claim for refund has been filed. 26 U.S.C. § 7422.

There is no review of substantive issues in the refund suit because the determination under the FPAA or the court's decision concerning the applicability of any penalty is conclusive. *See* 26 U.S.C. § 6230(c)(4); *see also* 26 C.F.R. § 301.6221-1(c) ("Assessment of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be made based on partnership-level determinations."). "Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner-level defenses." 26 C.F.R. § 301.6221-1(c). Thus, the refund suit is limited to partner-level defenses that may apply or challenges to the amount of the computational adjustment as applied to the individual partner. *See* 26 U.S.C. § 6230(c)(4). Partner-level defenses are "those that are personal to the partner or are dependent upon the partner's separate return and cannot be determined at the partnership level." 26 C.F.R. § 301.6221-1(d).

Additionally, before a penalty is assessed, section 6751 requires written supervisor approval. 26 U.S.C. § 6751 (2001). More specifically, section 6751, which is titled "Procedural Requirements," provides:

> No penalty under this title shall be assessed unless the **initial determination** of such assessment is personally proved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

26 U.S.C. § 6751(b)(1) (2001) (emphasis added). The Second Circuit recently interpreted this to mean that "compliance with § 6751(b) is part of the Commissioner's burden of production and burden of proof in a deficiency case in which a penalty is asserted." *Chai*, 851 F.3d at 221.  The

5

court went on to hold "that § 6751(b)(1) requires written approval of the initial penalty determination no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty." *Id.* at 221.

## III.   ANALYSIS

Defendant argues that the § 6751 claims should be dismissed under the variance doctrine, or in the alternative, *res judicata*. Under the variance doctrine, a taxpayer is "barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for refund." (Dkt. No. 32 at 4 (citing *Rodgers v. United States*, 843 F.3d 181 (5th Cir. 2016).) In essence, the Government argues that since the Taxpayers never alleged that the penalties were improperly assessed under § 6751 in any of the prior proceedings, including the years of litigation and the administrative refund claims, they are barred from now raising these claims in the refund suit. (Dkt. No. 32 at 6–7.) Alternatively, Defendant argues that the § 6751 claims are barred under *res judicata* because the issue of the application of the penalty was actually litigated in the prior partnership-level proceedings. (Dkt. No. 47 at 5–6.)

Taxpayers counter that the variance doctrine does not apply here because (1) Taxpayers have not relied on the Government's non-compliance with § 6751 as a defense to the penalties giving rise to the refund claims; and (2) any "variance" between the refund claims and this refund suit is due to the Government's own failure to follow its internal procedures, which Taxpayers could not have been aware of when they filed the original refund claims. (*See generally* Dkt. No. 43.) Relying heavily on the Second Circuit's opinion in *Chai*, Taxpayers argue that any claim for compliance with § 6751 does not need to be made "unless and until the Government fails to meet that burden." (Dkt. No. 43 at 3.) Taxpayers argue that Defendant was required to comply with § 6751 when making the penalty determination against the individual partners after the partnership-

6

level proceeding because such a determination is unique to each individual partner. (Dkt. No. 56 at 5; Dkt. No. 116, Hr'g Tr. at 20:17–21:7 ("[MR. CULLINAN: So any time the IRS, in our view, determines to assert a penalty or actually to assess a penalty against an individual partner, that's – that requires compliance with Section 6751.").)

Taxpayers essentially ask this Court to extend the holding in *Chai* to require that Defendant prove compliance with § 6751 as part of its *prima facie* case at the partner-level TEFRA proceeding. Taxpayers argue that Defendant must obtain written supervisor approval before issuing the notice that applies the results of the partnership-level proceeding, that is, the penalties that have already been conclusively determined—and fully litigated—as part of the partnership-level proceeding. Absent clear authority, requiring compliance with § 6751 as part of the Government's *prima facie* case at the partner-level TEFRA proceeding, the Court declines to do so. Under TEFRA's two-tiered structure, the penalty determination occurs—and indeed, concludes—at the partnership-level. It thus follows that any "initial determination" of such penalty, as required by § 6751, must be done prior to the initiation of the partnership-level proceeding.[2]

As the Fifth Circuit noted in *Rodgers*, "TEFRA [] created a two-stage procedure for the IRS to determine partnership-related tax matters: first, the IRS assesses partnership items, making any adjustments it deems necessary, and then it may initiate proceedings against individual partners." 843 F.3d 181, 184 (5th Cir. 2016). During the first stage, the applicability of the penalty as it relates to the partnership as a whole is determined. *See Woods*, 571 U.S. at 41 ("TEFRA gives courts in partnership-level proceedings jurisdiction to determine the applicability of any penalty that could result from an adjustment to a partnership item, even if imposing the penalty would also

---

[2] Having determined that § 6751 does not apply to the partner-level TEFRA proceeding, the Court need not address Defendant's arguments under the variance doctrine or *res judicata*.

require determining affected or non-partnership items such as outside basis."). While the penalty is assessed against the partnership, the tax penalty itself can only be imposed against the individual partners because partnerships do not pay taxes. *See id.* During the subsequent partner-level proceeding, the district court cannot disturb the penalty determination of the partnership-level proceeding because that determination is conclusive—only the imposition of the penalty may be contingent on subsequent partner-level determinations such as whether the partner underpaid his taxes by a large enough amount to trigger the penalty or whether the partner acted in good faith with reasonable cause. *See Woods*, 571 U.S. at 40–41. The intended conclusive nature of the partnership-level penalty determination is confirmed by other TEFRA provisions, which exclude the applied penalty from deficiency proceedings and substantive review. *See* 26 U.S.C. § 6230(a)(2)(A)(i) (stating that deficiency proceedings do not apply to deficiencies attributable to penalties but they do apply to deficiencies attributable to affected items which require partner level determinations); 6230(c)(4) ("[T]he determination under the final partnership administrative adjustment or under the decision of the court (whichever is appropriate) concerning the applicability of any penalty, additional to tax, or additional amount which relates to an adjustment to a partnership item shall also be **conclusive**.") (emphasis added); *see also* IRS Notice CC-2009-011 (March 11, 2009) ("[P]enalties related to partnership-level adjustments should be **directly assessed** even if the deficiency that results from the partnership-level determinations is itself subject to affected item deficiency procedures.") (emphasis added).

The Court is guided by the language of the statute itself, which provides that "no penalty under this title shall be assessed unless the **initial determination** of such assessment is personally approved." *See* 26 U.S.C. § 6751(b)(1) (emphasis added). Given the conclusive nature of the penalty assessment that is made at the partnership-level proceeding, it necessarily follows that any

approval to assess that penalty must take place prior to the subsequent partner-level proceeding. In determining when approval must be obtained, the Second Circuit in *Chai* found that "it must be the case that the approval is obtained when the supervisor has the discretion to give or withhold it. That discretion is lost once the Tax Court [or district court] decision becomes final." 851 F.3d at 220. While *Chai* was focused on the finality of deficiency procedures under § 6215, the same finality rings true of the partnership-level proceedings under TEFRA. Any discretion to assess the penalty is lost once the adjustments are finalized by either the FPAA or a district court's decision under § 6226. As such, the initial penalty determination under § 6751 must come before the initiation of the partner-level proceedings, which merely apply the penalty to the individual partners.

Allowing taxpayers to assert § 6751 at the partner-level proceeding would also frustrate the intended purpose of TEFRA's two-tiered structure. The Supreme Court cautioned in *Woods* that "barring partnership-level courts from considering the applicability of penalties that cannot be imposed without partner-level inquiries would render TEFRA's authorization to consider some penalties at the partnership level meaningless." *Woods*, 571 U.S. at 41. This streamlined process allows the IRS to pursue partnership items against the partnership as a whole rather than against its individual partners in individual deficiency proceedings. *See Callaway v. Commissioner*, 231 F.3d 106, 111 (2d Cir. 2000) ("The purpose of the TEFRA provisions described above is to ensure that, in general, partnership items are adjusted **once** at the partnership level. All partners, whose tax liability will be affected by its outcome, have the opportunity to participate in the audit allowing each to be bound by its result. In general, there are few exceptions to these centralized procedures.") (emphasis added); *Weiner v. United States*, 389 F.3d 152, 158 (5th Cir. 2004) (noting TEFRA's goal of "consolidating decisions that affect the partnership as a whole"); *Krause v.*

*United States*, 398 Fed. App'x 35, 37 (5th Cir. 2010) ("To avoid **duplicative litigation** stemming from the tax treatment of partnerships, Congress enacted TEFRA, which creates a unified procedure for determining the treatment of partnership tax transactions.") (emphasis added); *Krause v. United States*, 398 Fed. App'x 35, 37 (5th Cir. 2010) ("After the FPAA becomes final, a partner is barred from further litigating the adjustment or penalty because 'TEFRA requires the treatment of all partnership items to be determined at the partnership level."). Indeed, as the Fifth Circuit has noted:

> Before 1982, examining a partnership for federal tax purposes was a tedious process. A partnership filed an informational tax return on a Form 1065, which reflected the distributive shares of partnership income, gains, deductions, and credits attributable to the partners. If the IRS sought to adjust an item on a partnership return, the IRS had to examine each partner's individual return. As a result, the IRS could not ensure consistent adjustments of partnership items among partners. In response, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324, 648–671("TEFRA").

*Duffie v. United States*, 600 F.3d 362, 365 (5th Cir. 2010). The Fifth Circuit pointed out that TEFRA's singular partnership proceeding meant the IRS would not have "to conduct individual 'partner level' proceedings for each member of a partnership." *Id.* (citing *Prati v. United States*, 81 Fed. Cl. 422, 427 (Fed. Cl. 2008)). Requiring the IRS to get an initial determination, pursuant to § 6751, before applying the partnership-related penalties to the individual partners would undermine TEFRA's procedural structure and make the penalty determinations at the partnership-level proceeding an empty gesture. Moreover, to find otherwise would force the district court to revisit the applicability of the penalty at the partner-level proceeding, which directly contradicts the statutory language and both the purpose and limited scope of the partner-level proceeding.

As the applicability of the penalties has already been conclusively determined and extensively litigated, the Court finds the present circumstances are more in line with those in which other circuits refused to consider § 6751 claims. *See Mellow Partners v. Comm'r of Internal*

*Revenue*, 890 F.3d 1070, 1080–82 (D.C. Cir. 2018); *Kaufman v. Comm'r of Internal Revenue*, 784 F.3d 56 (1st Cir. 2015). In *Mellow Partners*, the D.C. Circuit declined to consider the taxpayer's § 6751 claim because it never raised this challenge during the Tax Court proceedings. The court reasoned that:

> Nothing precluded [the taxpayer] from doing so. Section 6751 has been in existence since 1998. [The taxpayer] was free to raise the same, straightforward statutory interpretation argument the taxpayer in *Chai* made—that is, that the language of § 6751(b)(1) requires IRS to obtain written approval by a certain point in the process in order to impose penalties.

*Mellow Partners*, 890 F.3d at 1081–82. Similarly, in *Kaufman*, the First Circuit found the taxpayers had waived their § 6751 claim because they failed to raise it "before taking th[e] appeal (or, indeed, at any earlier point in the labyrinthine history of th[e] litigation)." *Kaufman*, 784 F.3d at 59, 71. Here, despite the years of ongoing litigation that have ensued, the Taxpayers raised compliance with § 6751 *for the first time* not in the underlying partnership-level proceedings or their appeals, not in the administrative claim for a refund, not in the complaint, but in the initial disclosures served after this refund case was filed. The proper place to raise compliance with § 6751 was at the partnership-level proceeding.

The Court also notes that this finding is in line with the very purpose of § 6751, which was to prevent the IRS from asserting inappropriate penalties or using penalties as bargaining chips. *See Chai*, 851 F.3d at 219 (discussing the legislative history). After the partnership-level TEFRA proceeding, the penalty has been conclusively determined to be justified against the partnership. The intent and purpose behind the procedural safeguard of § 6751 is met at that time. Here, the penalties had already been asserted as part of the partnership-level proceedings and subsequent years of litigation in both the district court and the Fifth Circuit. The penalties are clearly appropriate and thus there is no need for such a procedural safeguard at the partner-level

proceeding which merely applies the penalty.

## IV.  CONCLUSION

For the reasons provided at the hearing and herein, Defendant's Motion to Dismiss Plaintiffs' Section 6751 Claims (Dkt. No. 32) is **GRANTED**.

**So ORDERED and SIGNED this 6th day of September, 2018.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE